UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

JAVELL FOX,

                              Plaintiff,

                                                              9:20-CV-0797
v.                                                            (GLS/ML)

C.O. ANDREJ L. GIFFORD, formerly
known as C.O. Gifford,

                              Defendant.

_____

APPEARANCES:                              OF COUNSEL:

JAVELL FOX
   *Pro Se* Plaintiff
Wallkill Correctional Facility
Box G
Wallkill, New York 12589

LETITIA A. JAMES                          PETER A. MCDANIEL, ESQ.
Attorney General for the State of New York   Assistant Attorney General
   Counsel for Defendant
The Capitol
Albany, New York 12224


MIROSLAV LOVRIC, United States Magistrate Judge

## **REPORT-RECOMMENDATION**

        Currently before the Court, in this civil rights action filed by Javell Fox ("Plaintiff")

against C.O. Andrej L. Gifford ("Defendant"), is Defendant's motion for summary judgement

pursuant to Fed. R. Civ. P. 56.  (Dkt. No. 33.)  For the reasons set forth below, I recommend that

Defendant's motion for summary judgement be denied.

I.    **RELEVANT BACKGROUND**

A.    **Plaintiff's Claims**

At this procedural posture, Plaintiff alleges the following two claims against Defendant:
(1) a claim of retaliation in violation of the First Amendment and 42 U.S.C. § 1983, and (2) a
claim that his right to equal protection of the law pursuant to the Fourteenth Amendment and 42
U.S.C. § 1983 was violated.  (Dkt. Nos. 1, 14.)  More specifically, Plaintiff alleges that on
October 6, 2017, while confined at Auburn Correctional Facility ("Auburn"), he was improperly
placed in keeplock confinement after an interaction with Defendant regarding Plaintiff's
hairstyle.  (*See generally* Dkt. Nos. 1, 4.)

B.    **Defendant's Statement of Undisputed Material Facts**

Unless otherwise noted, the following facts were asserted and supported by Defendant in
his Statement of Material Facts and not denied by Plaintiff in his response.  (*Compare* Dkt. No.
33, Attach. 1 [Def.'s Statement of Material Facts], *with* Dkt. No. 42 [Pl.'s Resp.].)

1.    The incidents alleged in the remaining claims in this action occurred while
Plaintiff was incarcerated at Auburn.

2.    On October 6, 2017, Defendant approached Plaintiff in the main recreational yard
at Auburn and inquired about Plaintiff's mohawk hairstyle, which was not in compliance with
Directive 4914.

3.    Plaintiff handed Defendant a half of a piece of paper, which Plaintiff identified as
a court order permitting him to maintain his mohawk hairstyle for religious reasons.[1]

---

[1]    Defendant cites to his declaration at paragraph 6 in support of this asserted fact.  (Dkt.
No. 33, Attach. 1 at ¶ 3 [citing Dkt. No. 33, Attach. 6 at ¶ 6].)  However, paragraph 6 of
Defendant's declaration refers to attaching Directive 4914 to his declaration as exhibit A.  (Dkt.
No. 33, Attach. 6 at ¶ 6.)  Nonetheless, support for this fact as asserted exists at paragraph 7 of
Defendant's declaration.  (Dkt. No. 33, Attach. 6 at ¶ 7.)

4.      Defendant asked Plaintiff to produce his identification and Plaintiff told Defendant that he could not produce it because it was in the phone slot.[2]

5.      Defendant avers that Plaintiff failed to exhaust his administrative remedies before commencing this action.

6.      On October 16, 2017, Plaintiff filed Grievance AUB-72924-17, titled "False Ticket Issued By Racist Officer."

7.      Plaintiff filed Grievance AUB-72924-17 regarding the incident with Defendant on October 6, 2017.

8.      In Grievance AUB-72924-17, Plaintiff alleges that he was verbally harassed due to his religious hairstyle by Defendant and placed in keeplock as retaliation.

9.      Auburn's Superintendent responded to Grievance AUB-72924-17 on December 29, 2017, and determined that there was no evidence to support any malfeasance on the part of staff.

10.      Defendant avers that Plaintiff never appealed the Superintendent's determination regarding Grievance AUB-72924-17 to the Central Office Review Committee ("CORC").

11.      Although Plaintiff claimed that Grievance AUB-72924-17 was "never filed," he acknowledged at his deposition that Grievance AUB-72924-17 was listed in the grievance printout as part of the certified records from Auburn, which indicated that it was filed on October 16, 2017.

12.      Plaintiff testified that he was never contacted by anyone with DOCCS related to Grievance AUB-72924-17.

---

[2]      *See*, *supra*, note 1.  Nonetheless, support exists for this fact as asserted.  (Dkt. No. 33, Attach. 6 at ¶ 8.)

13.    However, the grievance packet for Grievance AUB-72924-17 includes a memorandum dated December 15, 2017, from Lieutenant Dougherty to Captain Trowbridge. The memorandum states that Lieutenant Trowbridge interviewed Plaintiff regarding Grievance AUB-72924-17.

14.    In October 2017, Plaintiff was familiar with the process for filing grievances in the New York State prison system.

15.    Between December 10, 2014, and September 8, 2016, Plaintiff appealed four grievances (other than Grievance AUB-72924-17) to CORC.

16.    Defendant avers that he did not place Plaintiff in keeplock.

17.    Defendant avers that on October 6, 2017, he was unaware that Plaintiff had sued other DOCCS officers.

**C.    Parties' Briefing on Defendant's Motion for Summary Judgment**

**1.    Defendant's Memorandum of Law**

Generally, in support of his motion for summary judgment, Defendant asserts the following three arguments: (1) Plaintiff failed to exhaust his administrative remedies before commencing this action, (2) Plaintiff's retaliation claim pursuant to the First Amendment should be dismissed, and (3) Plaintiff's equal protection claim pursuant to the Fourteenth Amendment should be dismissed.  (*See generally* Dkt. No. 33, Attach. 11.)

More specifically, with respect to his first argument, Defendant argues that Plaintiff never appealed the Superintendent's determination regarding Grievance AUB-72924-17 to CORC. (Dkt. No. 33, Attach. 11 at 13-14.)  Thus, Defendant argues that Plaintiff failed to exhaust his administrative remedies and requests that this matter be dismissed with prejudice.  (*Id*.)

With respect to his second argument, Defendant argues, in the alternative, that Plaintiff's retaliation claim fails for several reasons.  (Dkt. No. 33, Attach. 11 at 15-18.)  Defendant argues—circularly—that "Plaintiff has not alleged facts that could plausibly lead a reasonable jury to find retaliation in this instance because Plaintiff has not met his burden for retaliation."  (*Id.* at 17.)  Further Defendant argues that Plaintiff fails to demonstrate a causal connection between his protected conduct (lawsuits against other officers) and the adverse action (being placed in keeplock).  (*Id.* at 15-18.)  In addition, Defendant argues that Plaintiff cannot establish that Defendant took any adverse action against him because there is no evidence to support that Plaintiff was placed in keeplock.  (*Id.*)

With respect to his third argument, Defendant argues that Plaintiff's equal protection claim pursuant to the Fourteenth Amendment should be dismissed because there is no genuine dispute of material fact that Directive 4914 was applied equally across all incarcerated individuals.  (Dkt. No. 33, Attach. 11 at 18-19.)  Defendant argues that there is no evidence in the record to support the assertion that other incarcerated individuals were treated differently than Plaintiff.  (*Id.*)

## 2.    Plaintiff's Opposition[3]

Generally, in opposition to Defendant's motion, Plaintiff asserts the following three arguments: (1) he exhausted all his administrative remedies before commencing this action, (2)

---

[3]    Plaintiff filed his opposition papers after the deadline set by this Court, "and his *pro se* status does not excuse compliance with Court Orders."  *Bowden v. City of Buffalo*, 15-CV-656, 2021 WL 1162879, at *3 n.1 (W.D.N.Y. Mar. 26, 2021) (citing *Johnson v. U.S. Dep't of Homeland Sec.*, 09-CV-0975, 2010 WL 2560485, at *2 (N.D.N.Y. June 24, 20210) (McAvoy, J.) ("Plaintiff's *pro se* status does not excuse his failure to be informed of this Court's rules and procedures and to comply with the deadline for filing opposition papers.")).  While I will consider Plaintiff's opposition papers for purposes of this Report and Recommendation, any future late filings may be summarily rejected.

his First Amendment retaliation claim should not be dismissed, and (3) his Fourteenth Amendment equal protection claim should not be dismissed. (*See generally* Dkt. No. 42.)

More specifically, Plaintiff argues that he filed a grievance on or around October 16, 2017, and given the nature of the grievance, it should have gone directly to the Superintendent. (*Id*. at 3.) Plaintiff argues that even assuming the Superintendent responded to his grievance, he was required to do so within twenty-five days and, according to Defendant, he responded on or around December 29, 2017, which was approximately seventy-four days later. (*Id*.) Plaintiff argues on December 3, 2017, he forwarded the grievance to CORC because he had not timely received a response from the Superintendent. (*Id*. at 3-5.) Plaintiff argues that he waited over one year for a response from CORC, and, when he did not receive a response from CORC, he commenced this action on or about November 2019.[4] (*Id*. at 3-5.)

Plaintiff argues that his retaliation claim should not be dismissed because on October 6, 2017, Defendant was aware that Plaintiff had a pending lawsuit against Defendant's "peers." (Dkt. No. 42 at 5.) More specifically, Plaintiff argues that he showed Defendant his "court order" and thus, Defendant was clearly aware of Plaintiff's pending lawsuit. (*Id*.) Plaintiff argues that if he had not filed a lawsuit, Defendant would not have keeplocked Plaintiff "for no reason." (*Id*.)

Finally, Plaintiff argues his equal protection claim should not be dismissed because other prisoners are permitted to wear religious and cultural hairstyles. (Dkt. No. 42 at 6.) For example, Plaintiff asserts that Jewish, "skinheads," and "Rastas" can wear their religious and cultural hairstyles but that Plaintiff was punished for wearing a mohawk "that[']s religious and cultural." (*Id*.) In addition, Plaintiff's memorandum of law states that he attached a declaration

---

[4]     This action was commenced on or about July 14, 2020. (Dkt. No. 1 at 10.)

and photograph of Ariel Myers, a prisoner who was housed at Auburn for four years who was "never punished for having a mohawk style haircut and was in fact allowed to wear a mohawk style haircut without interference by [D]efendant who on many occasions witnessed . . . that hairstyle."[5]  (*Id*. at 6-7.)

### 3.    Defendant's Reply

Generally in further support of his motion for summary judgment, Defendant argues that (1) Plaintiff has failed to raise questions of fact sufficient to preclude summary judgment because (a) Plaintiff's opposition papers were untimely, and (b) Plaintiff failed to submit a responsive N.D.N.Y Local Rule 56.1 Statement, thus, all of Defendant's properly supported facts not specifically controverted are deemed admitted; (2) there is no admissible evidence that Plaintiff exhausted administrative remedies before commencing this action; (3) Plaintiff's opposition does not create an issue of fact regarding his retaliation claim; and (4) Plaintiff fails to raise a triable issue of fact regarding his equal protection claim.  (*See generally* Dkt. No. 48.)

More specifically, Defendant argues that Plaintiff was granted three extensions of time to file a response in opposition to the pending motion, with the last extension being deemed a "final" extension by the Court.  (Dkt. No. 48 at 6.)  Notwithstanding these extensions, Plaintiff filed his response thirteen days after the final extension by the Court.  (*Id*.)  Thus, Defendant argues that "[o]n this basis alone, the motion should be granted as unopposed."  (*Id*.)  Further, Defendant argues that because Plaintiff failed to respond to Defendant's Statement of Material Facts, all properly supported facts not specifically controverted must be deemed admitted.  (*Id*. at 7-8.)

---

[5]      However, Plaintiff's opposition did not include a photograph and the "declaration" of Ariel Myers is inadmissible for the reasons set forth *infra*, at note 18.

With respect to his second argument, Defendant argues even if Plaintiff forwarded his initial grievance to CORC, he failed to properly appeal because the appeal process is initiated by filing a notice of decision to appeal (form #2133) with the inmate grievance clerk pursuant to 7 N.Y.C.R.R. § 701.8(g). (Dkt. No. 48 at 8-9.) Defendant argues that it is well settled even where an inmate does not receive a response to a grievance, the inmate is not relieved of the requirement to appeal to the next level once it becomes clear that a response is not forthcoming. (*Id*. at 10.) Further, Defendant argues that because Plaintiff failed to respond to his Statement of Material Facts Not In Dispute, it should be held that Plaintiff failed to exhaust his administrative remedies.

With respect to his third argument, Defendant asserts that there is no dispute of material fact that he would have taken the same disciplinary action against Plaintiff in the absence of Plaintiff's protected conduct. (Dkt. No. 48 at 10-13.) Defendant argues that he was unaware of any grievances filed by Plaintiff or any lawsuits that Plaintiff was engaged in. (*Id*.) In addition, Defendant argues that the Watch Commander's log book shows that Plaintiff was not in keeplock and thus, there was no adverse action taken against Plaintiff. (*Id*.)

With respect to his fourth argument, Defendant asserts that the record is devoid of admissible evidence that Plaintiff was placed in keeplock, nor was he forced to cut his hair to come into compliance with Directive 4914. (*Id*. at 13-14.) Thus, Plaintiff cannot establish any adverse outcome due to his hairstyle. (*Id*.) Moreover, Defendant argues that there is no admissible evidence that similarly situated prisoners were treated differently than Plaintiff. (*Id*.)

4.    **Plaintiff's Surreply**[6]

Generally, in response to Defendant's reply, Plaintiff argues that (1) he did not receive Defendant's Statement of Material Facts Not In Dispute and, in any event, he disputed all arguments raised in the summary judgment motion and reply; (2) there is no punishment for not having an identification; (3) even if Plaintiff was interviewed by a Lieutenant in Attica and forgot, it was passed the time for the Superintendent to respond when Plaintiff appealed to CORC, thus, he did exhaust his administrative remedies; and (4) corrections officers lie and cover up acts of retaliation for one another "all the time," Plaintiff was keeplocked, and Plaintiff submitted an unsworn declaration signed by witness Damon Hunter stating that he witnessed Plaintiff in keeplock from August 30, 2018, to September 2, 2018, and he "overheard C.O[.]s and Sgts state that inmate Javell Fox was keeplocked for his mohawk hairstyle." (Dkt. No. 51 at 1-3, 5.)

5.    **Defendant's Sur-Surreply**

Generally, in response to Plaintiff's surreply, Defendant argues: (1) that Plaintiff's sur-reply should not be considered because he did not obtain permission from the Court pursuant to N.D.N.Y. L.R. 7.1(a)(1), (2) Plaintiff did receive Defendant's Statement of Material Facts Not In Dispute; (3) the declaration of Mr. Hunter is inadmissible evidence and does not support Plaintiff's claims here that he was placed in keeplock on October 6, 2017. (Dkt. No. 56.)

---

[6]    Pursuant to N.D.N.Y. L.R. 7.1(a)(1) a surreply is not permitted. Notwithstanding, because Defendant was permitted leave to file a sur-surreply, the Court considered Plaintiff's submission. In the future, Plaintiff is directed to comply with the Court's rules and procedures.

## II.    RELEVANT LEGAL STANDARDS

### A.    Standard Governing A Motion For Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[7]  As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant. *Anderson*, 477 U.S. at 255. In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986).  However, when the movant has met its initial burden, the non-movant must come forward with specific facts showing a genuine issue of material fact for trial.  Fed. R. Civ. P. 56(a), (c), (e).

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant willfully fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute–even if that non-

---

[7]    As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (citation omitted).  As the Supreme Court has explained, "[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

movant is proceeding *pro se*.[8]  (This is because the Court extends special solicitude to the *pro se* litigant largely by ensuring that he or she has received notice of the consequences of failing to properly respond to the motion for summary judgment.)[9]  As has often been recognized by both the Supreme Court and Second Circuit, even *pro se* litigants must obey a district court's procedural rules.[10]

Of course, when a non-movant willfully fails to respond to a motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically."  *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Rather, as indicated above, the Court must assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the movant.  *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Grp., Inc.*, 140 F. Supp. 2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 56.1.  What the non-movant's failure to respond to the motion does is lighten the movant's burden.

For these reasons, this Court has often enforced Local Rule 56.1(b) by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported

---

[8]    *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 426 & n.2 (N.D.N.Y. 2009) (Suddaby, J.) (citing cases).

[9]    *Cusamano*, 604 F. Supp. 2d at 426 & n.3 (citing cases).

[10]    *Cusamano*, 604 F. Supp. 2d at 426-27 & n.4 (citing cases).

by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that statement[11]–even when the non-movant was proceeding *pro se*.[12]

Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(a)(3).[13] Stated another way, when a non-movant fails to oppose a legal argument asserted by a movant, the movant may succeed on the argument by showing that the argument possesses facial merit, which has appropriately been characterized as a "modest" burden. *See* N.D.N.Y. L.R. 7.1(a)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

---

[11] Among other things, Local Rule 56.1 (previously Local Rule 7.1(a)(3)) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises. N.D.N.Y. L. R. 56.1.

[12] *Cusamano*, 604 F. Supp. 2d at 427 & n.6 (citing cases); *see also Prestopnik v. Whelan*, 253 F. Supp. 2d 369, 371 (N.D.N.Y. 2003) (Hurd, J.) (holding that the Court is not required to "perform an independent review of the record to find proof of a factual dispute.").

[13] *See*, *e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1(a)(3) (previously Local Rule 7.1(b)(3)); *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

**B.    Standard Governing Exhaustion of Administrative Remedies**

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a); *see also Ross v. Blake*, 136 S. Ct. 1850, 1854-55 (2016) ("The [PLRA] mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions.").  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."  *Jones v. Bock*, 549 U.S. 199, 211 (2007).

The PLRA requires "proper exhaustion," which means using all steps required by the administrative review process applicable to the institution in which an inmate is confined and doing so properly.  *Jones*, 549 U.S. at 218 (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)); *see also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (exhaustion necessitates "'using all steps that the [government] agency holds out, and doing so properly'" (quoting *Woodford*, 548 U.S. at 90)).  In New York State prisons, DOCCS has a well-established three-step incarcerated grievance program ("IGP"), in which, (1) the inmate must file a grievance with the Inmate Grievance Resolution Committee ("IGRC") within twenty-one days of the alleged occurrence, (2) the inmate must then appeal an adverse decision by the IGRC to the superintendent of the facility within seven days after receipt of the IGRC's response, and (3) the inmate must then appeal an adverse decision by the superintendent to the CORC within seven days after receipt of

the superintendent's response.  7 N.Y.C.R.R. § 701.5; *McGee v. McGready*, 16-CV-4187, 2018 WL 2045094, at *2 (S.D.N.Y. Apr. 30, 2018).

"[W]hen a grievance concerns staff harassment, DOCCS procedures provide for an expedited review that allows for the complaint to bypass IGRC review and proceed before the Superintendent in the first instance." *Jackson v. Jackson*, 16-CV-8516, 2021 WL 981849, at *4 (S.D.N.Y. Mar. 16, 2021); *see* 7 N.Y.C.R.R. § 701.8.  Under the expedited procedure, the Superintendent has twenty-five days to respond to the grievance.  7 N.Y.C.R.R. § 701.8.  If the Superintendent fails to respond within twenty-five days, the inmate may appeal directly to CORC.  *Id.* § 701.8(g).  If the Superintendent does respond, the inmate has seven days from receipt of the response to appeal to CORC.  *Id.* § 701.8(h).  The IGP Supervisor has discretion to grant exceptions to the time limits for filing or appealing grievances.  *See id.* § 701.6(g). Whether or not the Superintendent timely responds, the procedure to appeal a determination of the Superintendent to CORC is to file "a notice of decision to appeal (form #2133) with the inmate grievance clerk."  *Id.* § 701.8(g)-(h).[14]  Inmates who have been transferred to a different facility can get their appeal to the appropriate grievance clerk by "mail[ing] the signed appeal form back to the IGP supervisor at the facility where the grievance was originally filed."  *Id.* § 701.6(h)(2).

"CORC is required to provide, through IGP staff, written confirmation that an appeal has been received, and if the inmate does not receive such confirmation within forty-five days, he 'should contact the IGP supervisor in writing to confirm that the appeal was filed and transmitted to CORC.'"  *Ruiz v. Link*, 20-CV-0235, 2022 WL 3020254, at *4 (S.D.N.Y. July 29, 2022)

---

[14]    The procedure to appeal to CORC under the normal, non-expedited procedures is the same.  7 N.Y.C.R.R. § 701.5(d)(1)(i).

(quoting 7 N.Y.C.R.R. § 701.5(d)(3)(i)).  The IGP requires CORC to respond to an appeal within thirty days of receipt.  7 N.Y.C.R.R. § 701.5(d)(3)(ii).  If CORC has received an appeal and fails to rule within those thirty days, the inmate is considered to have exhausted his administrative remedies and may file suit.  *Hayes v. Dahlke*, 976 F.3d 259, 270 (2d Cir. 2020).

While the PLRA mandates exhaustion of administrative remedies, it also "contains its own, textual exception to mandatory exhaustion."  *Ross*, 136 S. Ct. at 1858.  More specifically, section 1997e(a) provides that only those administrative remedies that "are available" must first be exhausted.  42 U.S.C. § 1997e(a); *see also Ross*, 136 S. Ct. at 1858 ("[T]he exhaustion requirement hinges on the availability of administrative remedies[.]") (quotation marks and citations omitted).  In the PLRA context, the Supreme Court has determined that "availability" means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of."  *Ross*, 136 S. Ct. at 1859 (quotation marks and citations omitted).

The *Ross* Court identified three circumstances in which a court may find that internal administrative remedies are not available to prisoners under the PLRA.  *Id.* at 1859-60.  First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates."  *Id.* at 1859.  "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use."  *Id.*  Finally, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  *Id.* at 1860.  In *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 123 n.2 (2d Cir. 2016), the Second Circuit noted that "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]"  The

illustrations of unavailability in *Ross* nonetheless guide the Court's inquiry. *Mena v. City of New York*, 13-CV-2430, 2016 WL 3948100, at *4 (S.D.N.Y. July 19, 2016).

Because non-exhaustion is an affirmative defense, the defendant bears the burden of showing that a prisoner has failed to satisfy the exhaustion requirements. *See Jones*, 549 U.S. at 216. The plaintiff must then establish the IGP grievance procedure was unavailable to him under *Ross*. *Id.*

### C.    Standard Governing Claims of Retaliation Pursuant to the First Amendment

"To prevail on a First Amendment retaliation claim under 42 U.S.C. § 1983, a prisoner must demonstrate: (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected conduct and the adverse action." *Vidal v. Valentin*, 16-CV-5745, 2019 WL 3219442, at *6 (S.D.N.Y. July 17, 2019); *see also Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003). A claimant meets the first element by demonstrating that he filed a grievance, which is a "constitutionally protected activity." *Davis*, 320 F.3d at 352-53; *see also Vidal*, 2019 WL 3219442, at *6 (explaining it "is well supported by case law" that the submission of a grievance constitutes a protected activity) (collecting cases); *Smith v. Hash*, 904-CV-0074, 2006 WL 2806464, at *6 (N.D.N.Y. Sept. 28, 2006) (Kahn, J.) ("Smith's filing of a grievance was clearly an assertion of a constitutional right protected by the First Amendment"). A claimant can meet the second element by demonstrating that he was subject to "retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising constitutional rights." *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004); *see also Williams v. City of New York*, 19-CV-3347, 2022 WL 130409, at *22 (S.D.N.Y. Jan. 14, 2022) (quoting *Smith v. Maypes-Rhynders*, 07-CV-11241, 2009 WL 874439, at *4 (S.D.N.Y. Mar. 31, 2009)) ("Whether an action is

'sufficiently adverse to deter someone of ordinary firmness from exercising his rights is a question of fact.'").  Finally, "[i]n considering whether a causal connection exists, a court may infer an improper or retaliatory motive in the adverse action from: (1) the temporal proximity of the filing to the grievance and the disciplinary action; (2) the inmate's prior good disciplinary record; (3) vindication at a hearing on the matter; and (4) statements by the defendant regarding his motive for disciplining the plaintiff." *Williams*, 2022 WL 130409, at \*24; *see also Speaks v. Saeed*, 14-CV-6826, 2022 WL 541767, at \*8 (E.D.N.Y. Feb. 23, 2022).

### D.    Standard Governing Equal Protection Claims Pursuant to the Fourteenth Amendment

The Equal Protection Clause requires that the government treat all similarly situated people alike.  *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Specifically, the Equal Protection Clause "bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if 'such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'"  *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)).  To state a viable claim for denial of equal protection, a plaintiff generally must allege "purposeful discrimination . . . directed at an identifiable or suspect class."  *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995).  In the alternative, under a "class of one" theory, plaintiff must allege that he has been intentionally treated differently from others similarly situated, with no rational basis for the difference in treatment.  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *DeMuria v. Hawkes*, 328 F.3d 704, 706 (2d Cir. 2003).

III.    **ANALYSIS**

After carefully considering the matter, I recommend that the Court deny Defendant's

motion for summary judgment.

A.    **Exhaustion**

Defendant has not met his burden at this juncture to demonstrate that there are no genuine

disputes of material fact regarding the exhaustion of Plaintiff's administrative remedies.

Plaintiff testified that he filed Grievance AUB-72924-17 (Dkt. No. 33, Attach. 9 at 46-

47) but did not receive a response to it (*id*. at 48-50).  Plaintiff testified that he "may have

received" a paper indicating that Grievance AUB-72924-17 was assigned a grievance number,

but he did not receive a Superintendent or CORC decision.  (*Id*. at 53.)  Plaintiff testified that

after he did not receive a response to Grievance AUB-72924-17, he sent a letter to the IGRC—

with a carbon copy to CORC—and did not receive a response to that letter.  (*Id*. at 52-53.)  More

specifically, Plaintiff testified that he "wrote to I.G.R.C. letting them know what's the status of

[his] grievance.  And [he] also sent a copy to C.O.R.C. letting them know that they're not doing

anything with [his] grievance."  (*Id*. at 54.)

Attached to his opposition, Plaintiff included a letter dated December 3, 2017, titled

"Grievance Appeal to CORC # AUB 72924-17."  (Dkt. No. 42 at 9.)  In his opposition

memorandum of law, Plaintiff asserts that he never received a response from the Superintendent

"and forwarded the grievance on or around December 3, 2017 to CORC."  (Dkt. No. 42 at 3

[citing Dkt. No. 42 at 9].)

Resolving all ambiguities and drawing all reasonable inferences against Defendant, it

could be inferred that Plaintiff sent the letter titled "Grievance Appeal to CORC # AUB 72924-

17" (Dkt. No. 42 at 9) to the Auburn grievance clerk and to CORC.  As Defendant argues, if

Plaintiff had mailed the appeal solely to CORC, he would not have properly exhausted his administrative remedies.  (Dkt. No. 48 at 9); *Ruiz*, 2022 WL 3020254, at *5 (citing *Valverde v. Folks*, 19-CV-8080, 2022 WL 836310, at *6 (S.D.N.Y. Mar. 21, 2022) ("Plaintiff did not properly comply with [the] prison grievance procedural rules.  Plaintiff . . . mailed his appeal statement directly to CORC.  However, to appeal a decision denying a grievance, an inmate must submit the appeal, not directly to CORC, but to the grievance supervisor of the facility where the grievance was originally filed for forwarding to that facility's grievance clerk."); *Wilkinson v. Banks*, 02-CV-0361, 2007 WL 2693636, at *6 (W.D.N.Y. Sept. 10, 2007) ("[N]o dispute exists that [the *pro se* plaintiff] did not follow correct procedure in attempting to appeal that grievance to CORC.  He did not file his appeal with the Inmate Grievance Clerk as required by the regulations, but rather mailed it directly to CORC.")) (holding that the plaintiff did not properly exhaust administrative remedies where he tried to mail his appeal directly to CORC, and CORC never received the document).  However, here, there is evidence in the record from which it is reasonable to infer that Plaintiff mailed the appeal to the grievance clerk as required by the regulations.

Moreover, I find that Plaintiff's alleged appeal to CORC was timely.  Grievance AUB-72924-17 was received on or about October 16, 2017.  (Dkt. No. 42 at 10.)  Thus, pursuant to the IGP regulations, the Superintendent was required to respond to Grievance AUB-72924-17 on or about November 10, 2017.  7 N.Y.C.R.R. § 701.8(f).  When the Superintendent failed to timely respond to Plaintiff's grievance, Plaintiff was permitted to appeal his grievance to CORC by filing the appeal with the inmate grievance clerk.  *Id.* § 701.8(g).  Plaintiff's letter to the Auburn grievance clerk is dated December 3, 2017.  (Dkt. No. 42 at 9.)

As a result, I recommend that Defendant's motion for summary judgment arguing that Plaintiff failed to exhaust his administrative remedies be denied and the Court conduct an exhaustion hearing pursuant to *Messa v. Goord*, 652 F.3d 305 (2d Cir. 2011) to determine whether Plaintiff properly exhausted his administrative remedies.[15]

### B.    Plaintiff's Retaliation Claim

In the context of inmate retaliation claims, adverse action is viewed objectively and requires the Court to ask whether the action taken with respect to the inmate "would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights." *Gill v. Pidlypchak*, 389 F.3d at 381 (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003)). Courts have long recognized that if the alleged retaliation is not something that would deter an individual from exercising their rights, the alleged conduct is *de minimis* and "outside the ambit of constitutional protection." *McFadden v. Friedman*, 12-CV-0685, 2015 WL 5603433, at *9 (N.D.N.Y. Sept. 23, 2015) (Suddaby, J.). The filing of a false misbehavior report that results in some form of punishment that cannot be labeled *de minimis* has been found sufficient to constitute adverse action. *See, e.g.*, *Reed v. Doe No. 1*, 11-CV-0250, 2012 WL 4486086, at *5 (N.D.N.Y. July 26, 2012) (Peebles, M.J.) (finding that the "filing of a false misbehavior report can qualify as an adverse action for the purposes of a First Amendment retaliation" where the report resulted in a fourteen-day term in keeplock confinement), *report and recommendation adopted*, 2012 WL 4486085 (N.D.N.Y. Sept. 27, 2012) (McAvoy, J.). However, the mere filing

---

[15]    "[T]he Second Circuit has held that factual disputes concerning exhaustion under the PLRA must be determined by courts rather than juries." *Coley v. Garland*, 19-CV-0382, 2023 WL 346242, at *4 (N.D.N.Y. Jan. 20, 2023) (Kahn, J.) (citing *Messa v. Goord*, 652 F.3d 305, 308-09 (2d Cir. 2011) ("[Plaintiff] argues that, unlike other aspects of exhaustion, which he concedes are properly resolved by the court, determining whether an inmate asserts a valid excuse for non-exhaustion is a task for the jury. We are not persuaded.")).

of a misbehavior report alone, without evidence of other repercussions does not constitute an adverse action. *Bartley v. Collins*, 95-CV-10161, 2006 WL 1289256, at *7 (S.D.N.Y. May 10, 2006) (finding misbehavior report that resulted in plaintiff's temporary loss of privileges did not amount to adverse action but misbehavior report that resulted in keeplock confinement for ten days did). Being placed in keeplock status can constitute an adverse action. *Gill v. Pidlypchak*, 389 F.3d at 383.

Here, the record, viewed in the light most favorable to Plaintiff, indicates that he was in keeplock from October 6, 2017, until he was transferred to Attica on some date after October 16, 2017.[16] (Dkt. No. 33, Attach. 9 at 41-48.) Plaintiff testified that on the day he was scheduled to be transferred to Attica, he received a false misbehavior report, an improper "hearing" was held at his cell, he was found guilty of not having an identification, and he was sentenced to time served in keeplock.[17] (Dkt. No. 33, Attach. 9 at 37, 41-44.) Plaintiff testified that while in keeplock he was denied meatless meals, recreation, and telephone privileges. (*Id.* at 37, 39-40.)

That period of—at least—ten days of keeplock, the loss of privileges because of his keeplock status, and the misbehavior report are sufficient to at least raise a question of fact as to whether Plaintiff suffered an adverse action. *See Bishop v. Stotler*, 21-CV-1027, at *3 (N.D.N.Y. Jan. 19, 2023) (Stewart, M.J.) (citing *Wells v. Wade*, 96-CV-1627, 2000 WL 1239085, at *4

---

[16]    In reaching this conclusion, the Court did not consider the "declaration" that Plaintiff included with his sur-reply from Damon Hunter. (Dkt. No. 51 at 5.) First, Mr. Hunter's "declaration" is unsworn and was not filed under penalty of perjury pursuant to 28 U.S.C. § 1746. (*Id.*) Second, the dates during which Mr. Hunter states that he witnessed Plaintiff in keeplock (August 30, 2018, to September 2, 2018) are not relevant to the issues currently before the Court.

[17]    Plaintiff testified that he was also charged with, *inter alia*, having a hairstyle not in compliance with Directive 4919, but that when he provided the court order permitting him to maintain the mohawk hairstyle, that portion of the misbehavior report was dismissed. (Dkt. No. 33, Attach. 9 at 41-42.)

(S.D.N.Y. Aug. 31, 2000) ("a rational trier of fact could find that the filing of a frivolous misbehavior report that resulted in thirteen days of pre-hearing 'keeplock' confinement would be likely to chill a person of ordinary firmness from continuing to engage in activity protected by the First Amendment namely, pursuing a prison grievance."); *see also Barnes v. Craft*, 04-CV-1269, 2008 WL 3884369, at *11 n.53 (N.D.N.Y. Aug. 18, 2008) (Mordue, C.J.) (citing cases)) (holding that the "period of eleven days [in keeplock] is sufficient to at least raise a question of fact as to whether [the p]laintiff suffered an adverse action.").

Although Defendant highlights evidence in the record indicating that Plaintiff was not on keeplock status (Dkt. No. 33, Attach. 10), the record also includes Plaintiff's sworn deposition testimony stating that he was in keeplock (Dkt. No. 33, Attach. 9 at 41-48). This evidentiary disagreement is best resolved by a trier of fact.

Moreover, the undersigned must consider whether Plaintiff has produced evidence sufficient to create a genuine issue of fact for trial regarding the causal connection between his purported protected activity and the adverse action. Causal connection requires Plaintiff to prove that "the protected conduct was a substantial or motivating factor" behind the retaliatory action. *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996).

Here, Plaintiff testified that when he spoke with Defendant in the Auburn yard on October 6, 2017, Defendant referenced Plaintiff filing a lawsuit (Dkt. No. 33, Attach. 9 at 32-33) and that Defendant then made a statement to the effect that he was going to make sure that Plaintiff "got keep locked" and "[w]asn't going to let [Plaintiff] go around with [his] hairstyle the way it [wa]s." (*Id.* at 36.) Moreover, crediting Plaintiff's version of events, he was placed in keeplock immediately upon returning to his unit after the interaction with Defendant. (*Id.*)

Taken together these facts could, in the view most favorable to Plaintiff, support a finding of a causal connection.

Defendant denies any retaliatory motive or knowledge of Plaintiff suing other DOCCS officers. (Dkt. No. 33, Attach. 6 at ¶ 12.) Despite this denial, Defendant acknowledges that on October 6, 2017, in the Auburn yard, Plaintiff handed him a "half of a piece of paper, which Plaintiff identified as a court order permitting him to maintain his Mohawk hairstyle for religious reasons." (Dkt. No. 33, Attach. 6 at ¶ 7.) Although "[a] lack of knowledge regarding the allegedly protected activity defeats a retaliation claim," *Girard v. Cuttle*, 15-CV-0187, 2018 WL 4190140, at *7 (N.D.N.Y. Aug. 10, 2018) (Stewart, M.J.), *report and recommendation adopted by*, 2018 WL 4188431 (N.D.N.Y. Aug. 31, 2018) (McAvoy, J.), *aff'd*, 826 F. App'x 41 (2d Cir. 2020), here there is a dispute about key facts underlying Plaintiff's claim—whether Defendant made comments about Plaintiff's pending lawsuit and whether his knowledge of Plaintiff's pending lawsuit precipitated Plaintiff's placement in keeplock.

As a result, I recommend that Defendant's motion for summary judgment with respect to the retaliation claim be dismissed.

### C.    Plaintiff's Equal Protection Claim

After carefully considering the matter, I recommend that the Court deny Defendant's motion for summary judgment with respect to Plaintiff's equal protection. I find Defendant's arguments with respect to Plaintiff's equal protection claim, unpersuasive for the following two reasons.

First, I reject Defendant's assertion that there is no evidence in the record that other incarcerated individuals at Auburn are permitted to wear their hairstyles pursuant to their cultural and religious norms without punishment or harassment. (Dkt. No. 33, Attach. 11 at 18-19.)

Plaintiff's verified complaint asserts that "Other racial groups are allowed to wear [their] cultural hairstyles . . . . without harassment, discrimination[,] or punishment." (Dkt. No. 1 at 4, ¶ 5); *see West v. Harkness*, 17-CV-0621, 2022 WL 1555364, at *6 n.10 (N.D.N.Y. May 17, 2022) (Suddaby, C.J.) (citing *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) ("[A] verified pleading . . . has the effect of an affidavit and may be relied upon to oppose summary judgment."); *Fitzgerald v. Henderson*, 251 F.3d 345, 361 (2d Cir. 2001) (holding that plaintiff "was entitled to rely on [his verified amended complaint] in opposing summary judgment"), *cert. denied*, 536 U.S. 922 (2002); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1993) ("A verified complaint is to be treated as an affidavit for summary judgment purposes.")) ("The Court notes that a Verified Complaint has the force and effect of an affidavit or declaration for purposes of a motion for summary judgment."); *McAllister v. Call*, 10-CV-0610, 2014 WL 5475293, at *3 (N.D.N.Y. Oct. 29, 2014) (Scullin, J.) (finding allegations in plaintiff's verified complaint sufficient to controvert facts in Statement of Material Facts on motion for summary judgment). More specifically, Plaintiff asserts that Caucasian inmates who identify as Arian culture are permitted to wear "the skin haircut," other Caucasian inmates who identify as "Viking culture" wear long hair, other Caucasian inmates who identify with "military culture" wear a crew cut, Jamaican or west Indian Black inmates wear dreadlocks. (Dkt. No. 1 at 4, ¶¶ 5-6.) In addition, Plaintiff asserts that at Auburn, Jewish inmates wear their hair in two curls that hang below each side of their ears, Rastafarian inmates wear dreadlocks, Native American prisoners are allowed to wear traditional native haircuts, and Muslim inmates are permitted to wear beards. (*Id*. at 5, ¶

9.)  Thus, there is admissible evidence in the record that other inmates at Auburn are permitted to wear cultural and religious hairstyles without punishment or harassment.[18]

Second, as set forth above in Part III.B. of this Report and Recommendation, there is a genuine dispute of material fact with respect to whether Plaintiff was placed in keeplock. (*Compare* Dkt. No. 33, Attach. 10, *with* Dkt. No. 1 at 6, ¶ 12, *and* Dkt. No. 33, Attach. 9 at 36:21-24.)

As a result, I recommend that the Court deny Defendant's motion for summary judgment to the extent it seeks dismissal of Plaintiff's equal protection claim because a genuine dispute of material fact exists regarding whether Plaintiff was treated differently than other prisoners and whether he suffered any adverse outcome because of his hairstyle.

**ACCORDINGLY**, it is respectfully

**RECOMMENDED** that Defendant's motion for summary judgement (Dkt. No. 33) be **DENIED**; and it is further respectfully

**RECOMMENDED** that the Court conduct an exhaustion hearing pursuant to *Messa v. Goord*, 652 F.3d 305 (2d Cir. 2011) to determine whether Plaintiff properly exhausted his administrative remedies; and it is further respectfully

**ORDERED** that the Clerk of the Court shall file a copy of this Report and Recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules.[19]

---

[18]     Plaintiff submitted a "Declaration" by Ariel Myers with his opposition filing.  (Dkt. No. 42 at 12.)  However, the undersigned did not consider Mr. Myers's "declaration" because it was unsworn and not submitted under penalty of perjury pursuant to 28 U.S.C. § 1746.

[19]     The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report.[20]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**

*Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: February 16, 2023
      Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge

---

[20]  If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).