UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JAVELL FOX,

                     Plaintiff,

v.                                                       9:20-CV-0797
                                                          (GLS/ML)
C.O. ANDREJ L. GIFFORD, formerly
known as C.O. Gifford,

                     Defendant.
_____

APPEARANCES:                                          OF COUNSEL:

JAVELL FOX
  *Pro se* Plaintiff
Wallkill Correctional Facility
Box G
Wallkill, New York 12589

ASWAD, INGRAHAM LAW FIRM               RACHEL ELLEN MILLER, ESQ.
  *Pro Bono* Counsel for the Plaintiff
46 Front Street
Binghamton, New York 13905

LETITIA A. JAMES                               PETER McDANIEL, ESQ.
Attorney General for the State of New York     AMANDA KURYLUK, ESQ.
  Counsel for Defendants                        Assistant Attorneys General
The Capitol
Albany, New York 12224

MIROSLAV LOVRIC, United States Magistrate Judge

## REPORT and RECOMMENDATION

      This is a civil rights action brought by Javell Fox ("Plaintiff"), a New York State prison inmate, pursuant to 42 U.S.C. § 1983, alleging that he was deprived of his civil rights by an individual employed at the prison facility in which he was confined.

Among the issues raised in a recent summary judgment motion filed by Defendant was whether Plaintiff satisfied the requirement that he exhaust available administrative remedies before commencing suit. Senior United States District Judge Gary L. Sharpe ordered that an evidentiary hearing be held to address the exhaustion question and referred the exhaustion hearing to the undersigned. (Dkt. No. 59.) Pro bono counsel was appointed for Plaintiff.[1] (Dkt. Nos. 61 ,62.) On June 14, 2023, the undersigned conducted an exhaustion hearing. Based upon the evidence adduced at that hearing, the Court concludes that Plaintiff failed to exhaust available administrative remedies before commencing this action. As a result, I recommend that Plaintiff's Complaint be dismissed.

I.      RELEVANT BACKGROUND

Plaintiff is a prison inmate currently being held in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). (*See generally* Dkt. No. 1.) Although he is now confined elsewhere, at the time of the alleged incident that forms the basis of his claims, Plaintiff was incarcerated at Auburn Correctional Facility ("Auburn") located in Auburn, New York. (Dkt. No. 1 at 2-3.)

At this procedural posture, Plaintiff has two claims against Defendant C.O. Andrej L. Gifford ("Defendant"): (1) a claim of retaliation in violation of the First Amendment and 42 U.S.C. § 1983; and (2) a claim that his right to equal protection of the law pursuant to the Fourteenth Amendment and 42 U.S.C. § 1983 was violated. (Dkt. Nos. 1, 14.) More specifically, Plaintiff alleges that on October 6, 2017, while confined at Auburn, he was improperly placed in keeplock confinement after an interaction with Defendant regarding Plaintiff's hairstyle. (*See generally* Dkt. Nos. 1, 14.)

---

[1]      The Court extends its appreciation to Rachel Miller, Esq. for her *pro bono* service.

2

## II.	RELEVANT LEGAL STANDARDS

Among the restrictions on inmate litigation introduced through enactment of the Prison Litigation Reform Act of 1996 ("PLRA"), Pub.L. No. 104-134, 110 Stat. 1321 (1996), is a section that provides, in relevant part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal Law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Woodford v. Ngo,* 548 U.S. at 81, 84 (2006) ("We hold that proper exhaustion of administrative remedies is necessary."). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002). In the event an inmate plaintiff commences an action in federal court before fully exhausting his administrative remedies, his unexhausted claims are subject to dismissal. *Pettus v. McCoy,* 04-CV-0471, 2006 WL 2639369, at *1 (N.D.N.Y. Sept. 13, 2006) (McAvoy, J.); *see Woodford,* 548 U.S. at 93 (quoting *Nussle*, 534 U.S. at 525) ("The PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing initiation of a federal case.'").

In New York State prisons, DOCCS has a well-established three-step incarcerated grievance program ("IGP"), in which, (1) the inmate must file a grievance with the Inmate Grievance Resolution Committee ("IGRC") within twenty-one days of the alleged occurrence, (2) the inmate must then appeal an adverse decision by the IGRC to the superintendent of the facility within seven days after receipt of the IGRC's response, and (3) the inmate must then appeal an adverse decision by the superintendent to the central office review committee

("CORC") within seven days after receipt of the superintendent's response. 7 N.Y.C.R.R. § 701.5; *McGee v. McGready*, 16-CV-4187, 2018 WL 2045094, at *2 (S.D.N.Y. Apr. 30, 2018).

"[W]hen a grievance concerns staff harassment, DOCCS procedures provide for an expedited review that allows for the complaint to bypass IGRC review and proceed before the Superintendent in the first instance." *Jackson v. Jackson*, 16-CV-8516, 2021 WL 981849, at *4 (S.D.N.Y. Mar. 16, 2021); *see* 7 N.Y.C.R.R. § 701.8. Under the expedited procedure, the Superintendent has twenty-five days to respond to the grievance. 7 N.Y.C.R.R. § 701.8. If the Superintendent fails to respond within twenty-five days, the inmate may appeal to CORC. *Id.* § 701.8(g). If the Superintendent does respond, the inmate has seven days from receipt of the response to appeal to CORC. *Id.* § 701.8(h). The IGP Supervisor has discretion to grant exceptions to the time limits for filing or appealing grievances. *See id.* § 701.6(g). Whether or not the Superintendent timely responds, the procedure to appeal a determination of the Superintendent to CORC is to file "a notice of decision to appeal (form #2133) with the inmate grievance clerk." *Id.* § 701.8(g)-(h).[2] Inmates who have been transferred to a different facility can get their appeal to the appropriate grievance clerk by "mail[ing] the signed appeal form back to the IGP supervisor at the facility where the grievance was originally filed." *Id.* § 701.6(h)(2).

"CORC is required to provide, through IGP staff, written confirmation that an appeal has been received, and if the inmate does not receive such confirmation within forty-five days, he 'should contact the IGP supervisor in writing to confirm that the appeal was filed and transmitted to CORC.'" *Ruiz v. Link*, 20-CV-0235, 2022 WL 3020254, at *4 (S.D.N.Y. July 29, 2022) (quoting 7 N.Y.C.R.R. § 701.5(d)(3)(i)). The IGP requires CORC to respond to an appeal within

---

[2] The procedure to appeal to CORC under the normal, non-expedited procedures is the same. 7 N.Y.C.R.R. § 701.5(d)(1)(i).

4

thirty days of receipt. 7 N.Y.C.R.R. § 701.5(d)(3)(ii). If CORC has received an appeal and fails to rule within those thirty days, the inmate is considered to have exhausted his administrative remedies and may file suit. *Hayes v. Dahlke*, 976 F.3d 259, 270 (2d Cir. 2020).

While the PLRA mandates exhaustion of administrative remedies, it also "contains its own, textual exception to mandatory exhaustion." *Ross v. Blake*, 136 S. Ct. 1850, 1858. More specifically, section 1997e(a) provides that only those administrative remedies that "are available" must first be exhausted. 42 U.S.C. § 1997e(a); *see also Ross*, 136 S. Ct. at 1858 ("[T]he exhaustion requirement hinges on the availability of administrative remedies[.]") (quotation marks and citations omitted). In the PLRA context, the Supreme Court has determined that "availability" means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Ross*, 136 S. Ct. at 1859 (quotation marks and citations omitted).

The *Ross* Court identified three circumstances in which a court may find that internal administrative remedies are not available to prisoners under the PLRA. *Id.* at 1859-60. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Finally, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860. In *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 123 n.2 (2d Cir. 2016), the Second Circuit noted that "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]" The

illustrations of unavailability in *Ross* nonetheless guide the Court's inquiry. *Mena v. City of New York*, 13-CV-2430, 2016 WL 3948100, at *4 (S.D.N.Y. July 19, 2016).

As an affirmative defense, *Jones v. Bock,* 549 U.S. 199, 216 (2007), the party asserting failure to exhaust administrative remedies typically bears the ultimate burden of proving its essential elements by a preponderance of the evidence.[3] *Soria v. Girdich,* 04-CV-0727, 2007 WL 4790807, at *2 (N.D.N .Y. Dec. 6, 2007) (DiBianco, M.J.) (citing *McCoy v. Goord,* 255 F. Supp. 2d 233, 247 (S.D.N.Y.2003)); *McEachin v. Selsky,* 04-CV-0083, 2005 WL 2128851, at *4 (N.D.N.Y. Aug. 30, 2005) (Scullin, J.) (citing *Howard v. Goord,* 98-CV-7471, 1999 WL 1288679, *3 (E.D.N.Y. Dec. 28, 1999)), *aff'd in part, vacated in part,* 225 F. App'x 36 (2d Cir. 2007).

The Second Circuit has ruled that a plaintiff in a lawsuit governed by PLRA is not entitled to a jury trial relating to his exhaustion of administrative remedies. *Messa v. Goord*, 652 F.3d 305, 308-10 (2d Cir. 2011). Rather, PLRA exhaustion is a matter of judicial administration, and the court, not a jury, determines factual disputes regarding an inmate's alleged failure to exhaust. *Messa,* 652 F.3d at 308-08; *see also McLean v. LaClair*, 19-CV-1227, 2021 WL 671650, at *9 (N.D.N.Y. Feb. 22, 2021) (Kahn, J.) (citations omitted) ("In order to determine whether Plaintiff properly exhausted administrative remedies, the Court must hold a hearing, at which a fact-finder can assess the credibility of witnesses and the relative weight of the evidence the parties present.").

The defendant bears the burden of proving that administrative remedies available to the plaintiff were not exhausted prior to the initiation of a civil action. *Williams v. Priatno*, 829 F.3d

---

[3]     Defendant has properly asserted Plaintiff's failure to exhaust available administrative remedies as an affirmative defense to his claims. (Dkt. No. 20 at ¶ 16.)

118, 122, 126 n.6 (2d Cir. 2016); *accord Howard v. Goord*, 98-CV-7471, 1999 WL 1288679, at *3 (E.D.N.Y. Dec. 28, 1999).  However, once the defendant has produced reliable evidence that such remedies were generally available, and the plaintiff nevertheless failed to exhaust those remedies, the plaintiff must then counter the defendant's proof by showing that, as to him or her, the remedy was unavailable.  *Smith v. Kelly*, 985 F. Supp. 2d 275, 284 (N.D.N.Y. 2013) (Suddaby, J.).  "As a result, practically speaking, while the burden on this affirmative defense remains at all times on the defendant, the plaintiff may sometimes have to adduce evidence in order to defeat it."  *Smith v. Kelly*, 985 F.2d at 284.  Thus, although "'the burden of production' may shift to a plaintiff when a court considers whether the grievance process was unavailable, the ultimate burden of proof, by a preponderance of the evidence, with respect to the exhaustion defense remains, at all times, with the defendant."  *Ferguson v. Mason*, 19-CV-0927, 2021 WL 862070, at *3 (N.D.N.Y. Jan. 7, 2021) (Baxter, M.J.) (citing *Grant v. Kopp*, 17-CV-1224, 2019 WL 368378, at *4, 8 (N.D.N.Y. Jan. 3, 2019), *report and recommendation adopted by*, 2019 WL 367302 (N.D.N.Y. Jan. 30, 2019) (Sharpe, J.)), *report and recommendation adopted by*, 2021 WL 531968 (N.D.N.Y. Feb. 12, 2021) (Sharpe, J.).

**III.   DISCUSSION**

    **A.   Whether Plaintiff Exhausted Administrative Remedies**

After carefully considering the matter, I answer this question in the negative for the reasons set forth in Defendant's memorandum of law.  (Dkt. No. 83.)  The following is intended to supplement, not supplant those reasons.

On or about October 11, 2017,[4] Plaintiff timely filed a grievance related to the allegations in this action, which was assigned grievance number AUB-72924-17. (Dkt. No. 33, Attach. 2 at ¶ 17; Dkt. No. 33, Attach. 5; Dkt. No. 33, Attach. 9 at 46-48; Dkt. No 82 at 127-28.) The issue presented at the hearing was whether Plaintiff properly appealed grievance AUB-72924-17 for purposes of exhaustion.[5]

Based on the allegations contained in grievance AUB-72924-17, the parties concur that it was subject to the expedited grievance procedures set forth in 7 N.Y.C.R.R. § 701.8. (Dkt. No. 83 at 7; Dkt. No. 84 at 1-2.) Thus, pursuant to 7 N.Y.C.R.R. § 701.8, grievance AUB-72924-17 was not reviewed by the IGRC and instead, was reviewed in the first instance by the Superintendent.

Here, the Superintendent's response to grievance AUB-72924-17 was filed on December 29, 2017, approximately 79 days after the filing of grievance AUB-72924-17, and thus beyond the twenty-five day deadline set forth in 7 N.Y.C.R.R. § 701.8(f). (Dkt. No. 33, Attach. 5 at 2.) Notwithstanding the Superintendent's late response, to properly exhaust his administrative remedies, Plaintiff had two options: (1) twenty-five days after he filed grievance AUB-72924-17 and had not received a response from the Superintendent, Plaintiff could have interpreted the non-response as a denial and appealed to CORC (via Auburn's grievance clerk) within seven days (hereinafter "Option 1"); or (2) within seven days of receiving the Superintendent's response dated December 29, 2017, Plaintiff could have appealed to CORC (via Auburn's grievance clerk) (hereinafter "Option 2"). *See Brooks v. Rock*, 11-CV-1171, 2014 WL 1292232,

---

[4]    It is unclear the exact date that Plaintiff filed his grievance, however, it was received by Auburn IGRC on October 16, 2017. (Dkt. No. 33, Attach. 5 at 2.)

[5]    Plaintiff did not assert that exhaustion was unavailable to him.

8

at *11 n.13 (N.D.N.Y. Mar. 28, 2014) (Sharpe, C.J.) (citing *Pacheco v. Drown*, 06-CV-0020, 2010 WL 144400, at *19 & n.21 (N.D.N.Y. Jan. 11, 2010) (Suddaby, J.); *accord Murray v. Palmer*, 03-CV-1010, 2010 WL 1235591, at *2 & nn.4, 6 (N.D.N.Y. Mar. 31, 2010 (Suddaby, J.)) (noting that "the failure by the IGRC or the Superintendent to timely respond to a grievance or first level appeal may be appealed to the next level(s), including CORC, in order to properly complete the grievance process.").

At the hearing, Plaintiff testified that on December 3, 2017, he still had not received a response on his grievance, so he sought to appeal the non-response by mailing the appeal to (1) CORC, and (2) Auburn IGRC.[6]  (Dkt. No. 82 at 131.)

However, I find that Plaintiff's hearing testimony regarding the alleged appeal dated December 3, 2017, lacking in credibility.  In making this finding, I generally relied on the following: (1) Plaintiff's unconvincing mannerisms and body language (including, but not limited to, his demeanor, tone of voice, facial expressions, and eye contact or lack thereof) during the relevant portions of his testimony; and (2) the fact that Defendant adduced documentary evidence (e.g., Exhibit D-3, Exhibits D-9-12) and witness testimony (e.g., the testimony of Rachel Sequin, Cheryl Palmetier, and Alyson Fox) that credibly undermined the relevant portions of Plaintiff's hearing testimony.  More specifically, Defendant adduced credible evidence that (1) CORC, Auburn IGRC, and Attica IGRC (where Plaintiff was incarcerated on

---

[6]  The Court notes that Plaintiff's alleged attempted appeal on December 3, 2017, did not fall within either of the seven-day windows set forth above in Option 1 or Option 2.  To the extent that Plaintiff opted to pursue Option 1, his alleged attempted appeal was untimely.  Even if Plaintiff reasonably waited an extra day or two to account for delays in prison mail delivery, his alleged appeal dated December 3, 2017, was sixteen days after the seven-day window to appeal the Superintendent's non-response.  Moreover, to the extent that Plaintiff opted to pursue Option 2, his alleged attempt was premature because he did not receive the Superintendent's response until after December 29, 2017.  (Dkt. No. 33, Attach. 5 at 2.)

December 3, 2017) did not receive Plaintiff's alleged appeal of the Superintendent's non-response dated December 3, 2017 (Dkt. No. 82 at 37, 83-85, 104, 106); (2) Plaintiff did not appeal the Superintendent's response dated December 29, 2017 (Dkt. No. 82 at 35-36); and (3) in 2016 Plaintiff attempted to appeal a different grievance directly to CORC and CORC responded with written letters informing Plaintiff that any grievances or appeals of grievances cannot be forwarded directly to CORC but must be filed at the facility where the grievance was filed (Dkt. No. 82 at 37-38, 42-48).

Contrary to Plaintiff's contention, the proper procedure for appealing a superintendent's denial of a grievance or non-response to a grievance is to appeal to CORC by mailing the appeal to the grievance clerk at the facility that the grievance was filed. *Compare* 7 N.Y.C.R.R. § 701.5(d)(1)(i) ("If the grievant . . . wishes to appeal to the CORC, he or she must complete and sign form #2133 and submit it to the grievance clerk within seven calendar days after receipt of the superintendent's written response to the grievance."), *and* 7 N.Y.C.R.R. § 701.8(g) ("If the superintendent fails to respond within the required 25 calendar day time limit the grievant may appeal his/her grievance to CORC. This is done by filing a notice of decision to appeal (form #2133) with the inmate grievance clerk."), *with* (Dkt. No. 84 at 3 [asserting that "whether or not the Auburn or Attica Facilities received Mr. Fox's CORC paperwork is irrelevant because the law allows Mr. Fox to appeal directly to CORC if the Superintendent does not provide a timely response."].)

Moreover, when Plaintiff did not receive written confirmation receipt from CORC of his alleged appeal dated December 3, 2017, he failed to contact the IGP supervisor at Auburn to confirm that his appeal was filed and transmitted to CORC. *Ruiz v. Link*, 20-CV-0235, 2022 WL 3020254, at *4 (S.D.N.Y. July 29, 2022) (quoting 7 N.Y.C.R.R. § 701.5(d)(3)(i)).

10

As a result, based on the record before the undersigned, I find that Defendant proved, by a preponderance of the evidence, that Plaintiff failed to exhaust his administrative remedies because he failed to properly appeal the Superintendent's decision (or lack thereof) to CORC.

### B. Whether Administrative Remedies Were Unavailable to Plaintiff[7]

This finding still leaves the inquiry for the court: whether the IGP was not "actually available" to Plaintiff, in which case he should be excused from his failure to fully exhaust the administrative remedies. *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 123 (2d Cir. 2016) (citing *Ross*, 136 S. Ct. at 1858-59). Based on the Court's evaluation of the credibility of Plaintiff and the defense witnesses and the record developed in this case, the undersigned concludes that the grievance process was available to Plaintiff.

**ACCORDINGLY**, it is respectfully

**RECOMMENDED** that Defendant's motion for summary judgment based on Plaintiff's failure to exhaust his administrative remedies before filing this action pursuant to the PLRA (Dkt. No. 33) be **GRANTED**; and it is further respectfully

**RECOMMENDED** that Plaintiff's Complaint (Dkt. No. 1) be **DISMISSED in its entirety**; it is further

**ORDERED** that the Clerk of the Court shall file a copy of this Report and Recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules.[8]

---

[7] As set forth above in note 5, *supra*, Plaintiff did not assert that administrative remedies were unavailable to him. The undersigned included this section solely for purposes of a comprehensive analysis.

[8] Although Plaintiff is represented by pro bono counsel at the current time, out of an abundance of caution, the Clerk shall also provide Plaintiff with copies of all unreported

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report.[9] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: August 10, 2023
Binghamton, New York

_____
Hon. Miroslav Lovric
U.S. Magistrate Judge

---

decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

[9]   If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).